**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § § | |
| Candy Club, LLC, *et al.*[1] | § § | Case No. 23-60048 |
| Debtors. | § § § | Jointly Administered |

**UNITED STATES TRUSTEE'S OBJECTION TO THE FIRST INTERIM FEE APPLICATION OF JACKSON WALKER LLP COUNSEL TO THE DEBTORS FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES FOR THE PERIOD FROM JULY 27, 2023 THROUGH OCTOBER 31, 2023**

(Relates to ECF Nos. 193)

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), files this *Objection to the First Interim Fee Application of Jackson Walker LLP Counsel to the Debtors for Allowance and Payment of Fees and Expenses for the Period from July 27, 2023 Through October 31, 2023* (the "**Objection**") pursuant to 11 U.S.C. §§ 327–331 and in support therefore respectfully represents as follows:

## SUMMARY OF THE ARGUMENT

1. The U.S. Trustee objects to the approval of up to $56,871.50 of fees billed by Jackson Walker, LLP ("**Jackson Walker**") on the basis that they may violate bankruptcy law or are not reasonable. In its First Interim Application, Jackson Walker appears to seek payment of prepetition fees and requests to be compensated for unnecessary work, vague and duplicative time entries and clerical tasks. Accordingly, these fees should be denied.

---

[1] The Debtors in this chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number are: Candy Club, LLC (8533), Candy Club Holding, Inc. (5377), Candy Club Acquisition, LLC (9010), and Candy Club Investment, LLC (none). The Debtors' service address is 10736 Jefferson Blvd. #325, Culver City, CA 90230.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1408.

3. Kevin M. Epstein is the duly appointed U.S. Trustee for Region 7. The U.S. Trustee has standing to raise, appear and be heard on any issue in a case or proceeding under the Bankruptcy Code. 11 U.S.C. § 307.

4. The U.S. Trustee has a statutory duty to monitor the administration of cases commenced under the Bankruptcy Code. 28 U.S.C. § 586(a)(3).

**PROCEDURAL BACKGROUND**

5. On July 27, 2023 (the "**Petition Date**") the Candy Club Investment, LLC, Candy Club, LLC, Candy Club Acquisition, LLC and Candy Club Holdings, Inc., each filed voluntary chapter 11 petitions (the "**Petitions**")[2] and each elected to proceed under Subchapter V of Chapter 11.

6. The cases are jointly administered under Case No. 23-60048, *In re Candy Club LLC*.

7. On July 31, 2023, Thomas A. Howley was appointed as Debtors' Subchapter V Trustee.

8. On August 28, 2023, the Debtors filed the *Application to Employ Jackson Walker LLP as Counsel to the Debtors and Debtors in Possession* [ECF No. 107] (the "**Retention Application**"). The Retention Application was approved on November 27, 2023, pursuant to the

---

[2] The Debtors respective Petitions can be found on the following dockets: (1) Candy Club Investment, LLC, 23-60047; (2) Candy Club, LLC, 23-60048; (3) Candy Club Acquisition, LLC, 23-60049; (4) Candy Club Holdings, Inc., 23-60050.

*Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession* [ECF No. 179] (the "**Retention Order**").

9. As part of the Retention Application, Jackson Walker, by and through Veronica Polnick made the following representation:[3]

> 6. The Firm and the Debtors entered into the Engagement Letter on July 27, 2023. In connection with the Engagement Letter, the Debtors provided a retainer to the Firm in the total amount of $165,000. The Firm assisted the Debtors with the preparation necessary for the filing of their voluntary petitions and transitioning their operations into chapter 11. Prior to the filing of these cases, the Firm applied its retainer in the aggregate amount of $137,497.32,[3] which was the total amount due to the Firm for all prepetition services and reimbursement of filing fee expenses.
>
> [3] This amount is inclusive of anticipated filing fees in the amount of $6,952.00.

ECF No. 107 at 19.

10. Likewise, the Retention Order does not include language which would allow Jackson Walker to use its remaining post-petition retainer to pay for outstanding pre-petition amounts. *See* ECF No. 179.

11. On December 6, 2023, Jackson Walker filed its *First Interim Fee Application of Jackson Walker LLP Counsel to the Debtors for Allowance and Payment of Fees and Expenses for the Period from July 27, 2023 Through October 31, 2023* [ECF No. 193] (the "**Fee Application**"). In support of the Application, Jackson Walker attached Exhibit A – Detailed Record of Fees.

---

[3] Likewise, the Debtors' respective Schedules do not indicate Jackson Walker is a general unsecured creditor of any Debtor. *See* ECF No. 100 at 13–27; ECF No. 102 at 13–14; ECF No. 104 at 13–14; ECF No. 106 at 13–14.

12. The U.S. Trustee also requested, and was provided, LEDES data from Jackson Walker to aid in his review of the Fee Application. The LEDES data included expense information not included in Exhibit A to the Fee Application.

13. On December 27, 2023, the U.S. Trustee requested additional information from Jackson Walker and asserted that certain fees and expenses included in the Interim Fee Application were objectionable.

14. Following that request and in an effort to resolve this matter, Jackson Walker extended the U.S. Trustee's deadline to file an objection to the Fee Application to January 5, 2024. [ECF No. 200].

15. Although Jackson Walker has made some concessions on certain fees and expenses, other fees remain objectionable.[4]

## ADDITIONAL FACTUAL BACKGROUND

A. **Filing of Petitions and First Day Hearings**

16. The first petition in these jointly administered cases was filed by Candy Club Investment LLC on July 27, 2023, at 10:45 p.m. A copy of the Notice of Bankruptcy Case Filing evidencing this is attached as **Exhibit 1**.

17. Thereafter, the other Debtors filed their Petitions and a series of other first day motions and pleadings that night and into the early morning of July 28, 2023.

---

[4] Based on prior communications with Jackson Walker, the U.S. Trustee understands that Jackson Walker agrees to voluntarily reduce its compensation by $1,605.10 for entries related to (1) attorney travel time and (2) word processing and research expenses. However, to the extent the U.S. Trustee's understanding is incorrect, he reserves all rights to object to those fees.

18. First Day hearings were set on July 28, 2023, at 11:00 a.m. An initial hearing was called at 11:00 a.m. which lasted approximately 19 minutes. *See* ECF No. 32. The hearing was continued to 1:30 p.m. and lasted approximately 1 hour and 10 minutes.[5] *See* ECF No. 34.

## B. The Objection to Designations

19. On August 7, 2023, the U.S. Trustee reached out to Jackson Walker for further explanation on how the Debtors qualified as Subchapter V debtors.

20. Given Jackson Walker's unwillingness to change the designation, on September 8, 2023, the U.S. Trustee filed his *Objection to Debtors' Designations as Subchapter V Small Business Debtors* [ECF No. 114] (the "**Objection to Designations**"). Based on the Debtors' Petitions, First Day Declaration, Schedules, Statement of Financial Affairs, and 341 Meeting testimony, the Objection to Designations asserted that the Debtors' aggregate, noncontingent, liquidated, secured and unsecured debts exceeded $7,500,000 and, consequently, they did not meet the definition of debtors under 11 U.S.C. § 1182(1).

21. Specifically, the U.S. Trustee filed his objection based on the following facts:

   a. Each of the Debtors' respective Petitions attached a list of the Debtors' 30 Largest Unsecured Creditors which show that the Debtors had approximately $3.5 million in general unsecured debt as of the Petition Date none of which were listed as "disputed". See ECF No. 1 at 12–14;

   b. The *Declaration of Keith Cohn in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**Cohn Declaration**") represented that he believed "the balance of the prepetition loan [was] approximately $6 million before any claims, adjustments, or offsets." ECF No. 11 at ¶ 18;

   c. Candy Club's Schedule E/F discloses fifty (50) creditors with claims totaling $3,647,744.12 none of which are listed as "disputed." ECF No. 99 at 13–27.

---

[5] The minutes' entry at ECF No. 29 indicates the hearing was continued until 2:30 p.m. However, the audio recording at ECF No. 34 indicates the recording started at approximately 1:30 p.m. on July 28th and the Court made such announcement at the end of the hearing earlier that day. However, upon information and belief, the hearing at 1:30 did not start until sometime after 2:00 p.m.

    d.  Keith Cohn ("**Mr. Cohn**") testified to the following at the 341 meeting:

      i.  He signed documents memorializing the loan from WTI to the Debtors;

      ii.  The Debtors borrowed $7.5 million from WTI in 2021 in two or three tranches;

      iii.  Each extension of credit was payable as interest only for six (6) months and thereafter amortized over 30 months;

      iv.  At the time the loan was made, the Debtors expected they would need to repay WTI;

      v.  The loan was modified by a forbearance agreement in the last year;

      vi.  The $6 million estimate in the Cohn Declaration was the outstanding principal WTI claimed it was owed; and

      vii.  WTI's debt was listed as contingent, unliquidated, and disputed because (1) the Debtors were not sure if WTI applied payments correctly under the loan, and (2) the Debtors are evaluating whether they have claims against WTI.

22.  Based on these facts, the U.S. Trustee believed WTI's claim was clearly not contingent because the Debtors had a legal duty to pay the debt when the loan documents were signed, and its repayment was not dependent on the occurrence of a future event. *See Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220 (5th Cir. 1993), *citing In re All Media Properties, Inc.*, 5 Bankr. 126, 133 (Bankr. S.D. Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir. Unit A May 1981). Likewise, the U.S. Trustee believed Mr. Cohn's testimony about the terms of the loan showed that WTI's claim was liquidated because the amount of the claim could be readily calculated from the underlying documents. *In re Knight,* 55 F.3d 231, 235 (7th Cir. 1995); *citing* Norton, Bankruptcy Law & Practice § 18:12 at 18–48.

23.  On September 29, 2023, the Debtors filed their *Response to U.S. Trustee's Objection to Debtors' Designations as Subchapter V Small Business Debtors* [ECF No. 154] (the "**Response**").

24. In summary, the Response argued the following:

    a. That when interpreting who qualifies as a debtor under Subchapter V, case law interpreting who may be a debtor under chapter 13 is of limited value to the Court even though Jackson Walker cited to several Subchapter V cases where Courts relied on chapter 13 case law in their analysis;

    b. The U.S. Trustee's Objection to Designation was untimely even though the Objection was filed 3 days after the conclusion of the 341 meeting; and

    c. That the claim of its lender, WTI, which the Debtors represented to be at least $6 million in its first day declaration, was actually unliquidated on the Petition Date because the "loan [was] in default, with [a] dispute about payment application, and WTI would have had to liquidate its claim to pursue any deficiency beyond its secured status," which was contrary to established Fifth Circuit precedent on liquidated claims and provided no basis for altering that established precedent.

**C.    Waiver of Designation**

25. On or about October 18, 2023, the Court set a hearing on the Objection to Designations for November 13, 2023, which was later continued to November 27, 2023. The U.S. Trustee conducted discovery and obtained documents from WTI.

26. The U.S. Trustee was set to conduct a deposition of Mr. Cohn, on November 7, 2023, in anticipation of the hearing on the Objection to Designation.

27. On November 6, 2023, before conducting the deposition, the Debtors agreed to withdraw the designations. Further, the Debtors agreed to inform WTI and Judge Meredith S. Grabill, the mediator appointed in the case, of the agreement on or before the mediation to be held on November 10, 2023.

28. On November 22, 2023, the U.S. Trustee and Jackson Walker submitted the proposed *Joint Stipulation and Agreed Order* [ECF No. 172].

29. On November 27, 2023, the Court signed and entered the *Joint Stipulation and Agreed Order* [ECF No. 178].

30. On December 4, 2023, the Debtors filed Amended Petitions to remove the subchapter V designations. [ECF Nos. 189–92].

## LEGAL STANDARDS

A. **Awards of Professional Fees Under 11 U.S.C. § 330**

31. Section 330(a)(1) of the Bankruptcy Code provides that after notice and a hearing, the court may award to an estate professional person employed under Section 327 "reasonable compensation for actual, necessary services rendered" by such a professional person. 11 U.S.C. § 330(a)(1). In determining whether the amount of compensation sought is reasonable, the court shall consider, among other factors, whether services provided were necessary to the administration of the estate, or beneficial at the time at which the service was rendered toward the completion of, a case under this title. 11 U.S.C. § 330(a)(3).

32. The court shall not allow compensation for services that were not reasonable likely to benefit the debtor's estate or necessary to the administration of the estate. 11 U.S.C. § 330(a)(4)(A). The court may award compensation that is less than the amount of compensation that is requested. 11 U.S.C. § 330(a)(2).

33. Section 330(a)(3)(A)–(E) provides that in determining the amount of reasonable compensation to award, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

34. An estate professional seeking an order authorizing compensation must provide "detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Applicants must supply sufficient information to enable proper analysis of the services rendered as required by Fed. R. Bankr. P. 2016(a). *See, e.g.*, *In re Busy Beaver Bldg. Centers., Inc.*, 19 F.3d 833, 845 (3d Cir. 1994); *In re Meade Land & Dev. Co.*, 577 F.2d 858, 859 (3d Cir. 1978).

B.   **Factors for Considering the Reasonableness of Professional's Fees**

35. The starting point for an evaluation of the reasonableness of a professional's fees is an explanation that discloses what was done, when it was done, by whom it was done, and how long a project took. 11 U.S.C. § 330(a)(3); *In re Jones*, 356 B.R. 39, 45 (Bankr. D. Idaho 2005). Additionally, there is an inherent public interest that must be considered in awarding fees in a bankruptcy case and trial courts have a supervisory obligation to evaluate the appropriateness of fees and expenses requested by a bankruptcy professional. *In re Fibermark, Inc.*, 349 B.R. 385, 393-94 (Bankr. D. Vt. 2006).

36. Fees may not be awarded to an estate professional unless and until the applicant shows that the services provided were reasonably likely to benefit the estate and that the fees are reasonable and necessary. *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 268 (5th Cir. 2015). Reasonableness, necessity, and benefit are critical threshold issues before the awarding of any fees or compensation. *Id.*; *see also Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises)*, 997 F.2d 1321, 1322–23 (10th Cir. 1993) (holding that disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative). In determining whether legal services were likely to benefit the estate when rendered, courts should consider "among other factors, the probability of success at the time the services were rendered, the reasonable costs of

pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor)." *In re Woerner,* 783 F.3d at 276.

37. Finally, Bankruptcy Courts have the independent duty to examine the reasonableness of the fees requested by retained professionals, notwithstanding the absence of objections by the trustee, debtor, or creditors. *In re AutoParts Club, Inc.*, 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997) (*citing In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994)); *In re WNS, Inc.*, 150 B.R. 663, 664 (Bankr. S.D. Tex. 1993) ("Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and it has the duty to independently examine the reasonableness of the fees.").

C.     **Burden of Proof on the Applicant**

38. The applicant bears the burden of proof in all fee matters. *Caplin & Drysdale Chartered v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 526 F.3d 824, 827 (5th Cir. 2008). The burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *In re Spanjer Bros., Inc.*, 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (*citing In re Pettibone Corp.*, 74 B.R. 293, 294 (Bankr. N.D. Ill. 1987)). "The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney or trustee who has not done so himself." *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1326 (5th Cir. 1989). "Moreover, since every dollar received by the applicant results in one dollar less for creditors, justification for compensation is a necessity." *Id.*

39.     If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation. *See Brake v. Tavormina (In re Beverly Mfg. Corp.)*, 841 F.2d 365, 371 (11th Cir. 1988). Similarly, a court may reduce an estate professional's fees or expenses when they are disproportionate to the benefit to the estate, even if the court already approved the estate professional's retention under Sections 327 and 328. *See In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses).

## SPECIFIC OBJECTIONS TO THE FEE APPLICATION

A.     **Fees Related to Filing and First Day matters.**

40.     Jackson Walker is seeking compensation for several time entries made by Ms. Polnick and Mr. McKay on July 27 and July 28th as follows:

| Date | Timekeeper | Hours | Amount | Description | Category |
|---|---|---|---|---|---|
| 07/27/23 | V. Polnick | 13.0 | $9,750.00 | File case and pleadings | Case Administration |
| 07/28/23 | V. Polnick | 14.0 | $10,500.00 | Prepare for (12.5) and attend first day hearing (1.5). | Case Administration |
| 07/27/23 | Z. McKay | 14.9 | $10,430.00 | Work on DIP issues. | Financing/Cash Collections |
| 07/28/23 | Z. McKay | 12.5 | $8,750.00 | Prepare for and argue priming DIP hearing. (3.5) Negotiation regarding same. (3) Prepare for and argue after break priming DIP hearing. (3.5) Make edits to documents, communications regarding same. (2.5) | Financing/Cash Collections |
|  |  |  | $39,430.00 |  |  |

41.     With regards to the entries from Ms. Polnick and Mr. McKay of July 27, 2023, the fee entries are vague and lumped. Additionally, Ms. Polnick's entry may include charges for clerical tasks normally handled by paralegals, including filing pleadings, that are considered non-

compensable overhead costs. However, because of the lack of detail, the U.S. Trustee is unable to ascertain the nature, reasonableness, or value of the services to the estate. This alone warrants denial.

42. In addition, the entries also appear to bill for more than 24 hours in a day. Based on the timing of the filing of the first petition (on July 27th at 10:45 p.m.) and the conclusion of the first day hearings (on July 28th at approximately 3:30 p.m. about 17 hours later), Ms. Polnick's entries of 27 hours and Mr. McKay's entries of 27.4 hours for Mr. McKay are either duplicative or an impermissible attempt to charge the estate for prepetition work which Ms. Polnick previously represented was paid in full. *See supra* ¶ 9; *see also* 11 U.S.C. §§ 101(14), 327(a).

43. As a result of how and when these entries were made, the U.S. Trustee cannot ascertain what was done, when it was done, or how long these activities took. *See* 11 U.S.C. § 330(a)(3); Fed. R. Bankr. P. 2016(a); *In re Jones*, 356 B.R. at 45. Accordingly, the U.S. Trustee requests that each of these fee entries be denied.

44. Finally, because of the timing of the filing late on July 27th and nature of these fee entries identified above, the U.S. Trustee is concerned additional fee entries made on July 27th may be attempts to collect prepetition fees. The U.S. Trustee has identified the following additional fee entries billed on July 27th which may be objectionable and requests that Jackson Walker provide further information to support its Fee Application:

| Date | Timekeeper | Hours | Amount | Description | Category |
|---|---|---|---|---|---|
| 07/27/23 | C. Cameron | 3.2 | $1,712.00 | Review and prepare first day motions for filing following bankruptcy filing. | Case Administration: |
| 07/27/23 | E. Flynn Meraia | 3.3 | $1,864.50 | Prepare first day motions for filing (1.5); conference and correspond with JW team re same (.8); review same (1.0). | |
| 07/27/23 | C. Bristow | 2.5 | $1,862.50 | Review due diligence regarding the DIP financing, checklist and | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | corporate formalities (.8), communications and loan document updates (1.0), attend conference calls (.7). | |
| | | | **$5,439.00** | | |

**B.    Fees Related to the Subchapter V Designation**

45.    As part of the Fee Application, Jackson Walker is also seeking compensation for fee entries related to the case filing as a Subchapter V case. These include entries for working on Subchapter V issues, drafting the Response, and filing a motion to extend the deadline to file a subchapter V plan. The U.S. Trustee has identified the following specific entries:[6]

| Date | Timekeeper | Hours | Amount | Description | Category |
|---|---|---|---|---|---|
| 8/11/2023 | Z. McKay | 3.0 | $2,100.00 | Work on subchapter 5 issues | Case administration |
| 8/16/2023 | Z. McKay | 1.5 | $1,050.00 | Subchapter V trustee objection, matters | Case administration |
| 9/28/2023 | D. Trevino | 0.3 | $72.00 | First draft of response to the objection of the trustee to subchapter V designation | Case administration |
| 9/29/2023 | Z. McKay | 5.5 | $3,850.00 | Work on response to designation objection | Case administration |
| 9/29/2023 | C. Cameron | 1.8 | $963.00 | Review and revise response to UST objection to small business designation | Case administration |
| 9/30/2023 | Z. McKay | 0.4 | $280.00 | Multiple communications re designation matter | Case administration |
| 10/12/2023 | V. Polnick | 0.7 | $570.50 | Respond to UST re designation hearing | Case administration |
| 10/24/2023 | D. Trevino | 0.6 | $150.00 | First draft for motion to extend exclusivity | Plan and disclosure statement |

---

[6] Certain entries identified above have been extracted from aggregated billings. For example, the entry on 8/11/2023 by Z. McKay reads as follows in the Invoice.

> 08/11/23   Z. McKay   4.1   2,870.00   Prepare for and attend WIP meeting. (.6) Work on subchapter 5 issues. (3) Communications with subchapter 5 trustee. (.5).

| Date | Timekeeper | Hours | Amount | Description | Category |
|---|---|---|---|---|---|
| 10/25/2023 | Z. McKay | 0.9 | $652.50 | Prepare for and lead call with UST attorney | Case administration |
| 10/25/2023 | E. Flynn Meraia | 0.4 | $254.00 | Review, revise motion to extend plan filing | Plan and disclosure statement |
| 10/25/2023 | Z. McKay | 2.7 | $1,957.50 | Draft motion to extend time to file plan | Plan and disclosure statement |
| 10/25/2023 | M. Ghyas | 0.2 | $103.00 | Review motion to extend exclusivity | Plan and disclosure statement |
|  |  |  | $12,002.50 |  |  |

46. The U.S. Trustee flagged the Subchapter V designation issue for the Debtors shortly after the first day hearing. The Cohn Declaration and Petitions indicated the Debtors did not qualify as a Subchapter V debtors because their aggregate debt was at least $9.5 million. The U.S. Trustee also investigated the Debtors position that WTI's claim was contingent and/or unliquidated and obtained testimony from the Debtors' representative at the 341 meeting of creditors prior to filing his Objection which demonstrated the representation was incorrect. *See supra* ¶ 21.d. The Subchapter V designation was not founded in law or fact from the outset of these cases. Indeed, the U.S. Trustee believes that the Debtors' agreement to amend the petitions on the eve of deposition indicates that their witness could not support the legal position taken given the language of 11 U.S.C. § 1182(1)(a) and the debt limits set forth therein.

47. Accordingly, the U.S. Trustee objects to the fees as they were not "good gambles" when made and therefore were not reasonably likely to benefit the estate. *See In re Woerner*, 783 F.3d at 274, 276. Fees related to the Response specifically did not benefit the estate because, at the time incurred, the probability of success was nil, and a reasonable lawyer would not continue to incur fees on behalf of an estate for such a losing proposition. Likewise, a motion to extend the

period to file a Subchapter V plan would have been unnecessary had Jackson Walker desisted from its course of action that was doomed from the start.

48. As a result, these fees requested are not reasonable, provided no benefit to the estate, and should not be borne by the estate or creditors. Therefore, the U.S. Trustee requests that the fees associated with the Subchapter V designation identified above be denied in full.

## CONCLUSION

WHEREFORE, the U. S. Trustee prays that the Court sustain this Objection, enter an order disallowing the fees specifically identified herein as objectionable, and grant the U. S. Trustee such other and further relief as the Court deems just and equitable.

Date: January 5, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Vianey Garza*
    Vianey Garza, Trial Attorney
    Tex. Bar No. 24083057/Fed. ID No. 1812278
    515 Rusk, Suite 3516
    Houston, Texas 77002
    (713) 718-4650 – Telephone
    (713) 718-4670 – Fax
    Email: Vianey.Garza@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024 a copy of the foregoing *Objection to the First Interim Fee Application of Jackson Walker LLP Counsel to the Debtors for Allowance and Payment of Fees and Expenses for the Period from July 27, 2023 Through October 31, 2023* was served on all parties entitled to service through the Court's ECF system.

By: */s/ Vianey Garza*
    Vianey Garza